UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID L. F., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-CV-98-CDL |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

# OPINION AND ORDER

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c). For the reasons set forth below, the Court **affirms** the Commissioner's decision.

## I. Standard of Review

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

1

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the Court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.     Background and Procedural History

The plaintiff filed an application for disability and disability insurance benefits on January 28, 2019, alleging a disability onset date of January 17, 2016. (R. 125). The plaintiff's last insured date for the purpose of disability insurance benefits is September 30, 2016. (*Id.*; R. 18). He alleged that he became disabled due to mental conditions and seizures. (R. 125-126). He was 38 years old on the alleged onset date. (R. 125).

The Commissioner denied plaintiff's application on initial review and on reconsideration. After the plaintiff requested a hearing before an Administrative Law Judge

(ALJ), telephonic hearings were held on May 13, 2020 and July 7, 2021. At each hearing, testimony was given by plaintiff and a Vocational Expert (VE). (*See* R. 36-111).

When he filed his application for disability benefits, the plaintiff was working part-time, packing and shipping merchandise for Macy's, but that work reportedly did not rise to the level of substantial gainful activity. (*See* R. 83-84). During the initial ALJ hearing on his claim in May 2020, the plaintiff testified that, in that position, he tried his best to keep up with the required pace of production and had not been disciplined for mistakes. (R. 89). However, at the July 2021 hearing, the plaintiff indicated that he had more recently had problems keeping up with his production quota, had been making errors in his work, and that he was no longer working for Macy's. (R. 51-52). He testified that his claim for unemployment benefits was denied because he was found to have left the job voluntarily. (R. 51). The plaintiff testified that he has been fired from previous jobs due to performance problems. (R. 91).

The plaintiff left school in ninth grade, but he later obtained a high school equivalency diploma, during time he spent in prison. (R. 83). In 2002 and 2003 he worked as an industrial cleaner through a temporary staffing agency. (R. 43-44). That work was performed at the heavy-exertion level, at specific vocational preparation (SVP) Level 2, as defined in the Dictionary of Occupational Titles (DOT). The plaintiff has additional past relevant work as a material handler (heavy exertion, SVP Level 3), compression molding machine operator (heavy exertion, SVP Level 5), and hand packager (medium exertion, SVP Level 2). (R. 65-66). The plaintiff at one time received training and obtained

certification to operate a forklift. (R. 83). While in prison, the plaintiff also built houses for Habitat for Humanity. (R. 86-87). He was released from prison in 2014. (R. 87).

At the May 13, 2020 hearing, the plaintiff stated that he experiences hallucinations that make him sweat, experience paranoia, and "feel weird," and that he copes by taking deep breaths and splashing water on his face. (R. 95-96). He testified that this occurs once or more daily. (R. 96). He has missed work at times due to feelings of depression and a lack of motivation. (R. 98). The plaintiff testified that he had stopped using alcohol and marijuana for a 90-day period, but had recently relapsed. (R. 97).

At the July 7, 2021 hearing, the plaintiff indicated that he takes Seroquel and Mitrazapine at night to treat his conditions. (R. 58-59). The medications help him sleep, but he believes they also give him nightmares, and he does not believe the medications reduce his hallucinations. (R. 59-60). The plaintiff testified that he hears voices telling him to hurt himself or someone else, but that he tries to ignore them. (R. 60-61). He also experiences feelings of paranoia and panic attacks, especially when around other people. (R. 62-63). The plaintiff has never obtained a driver's license, due to a lack of money and previous DUIs. (R. 87). He testified that he can read and write, and that he "read[s] the Bible a lot." (R. 88).

On August 9, 2021, the ALJ issued a decision denying benefits. (R. 15-29). On January 12, 2022, the Appeals Council denied the plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1-4). Plaintiff filed a timely appeal in this Court, which has jurisdiction to review the ALJ's August 9, 2021 decision under 42 U.S.C. § 405(g).

**III.    The ALJ's Decision**

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, considering the claimant's age, education, and work experience. *Id*.

Here, at step one the ALJ found that the plaintiff has not performed substantial gainful activity since his alleged onset date of January 17, 2016. (R. 18). At step two, the ALJ determined that the plaintiff has severe impairments, including depressive disorder, anxiety disorder, alcohol use disorder, cannabis use disorder, and borderline intellectual

functioning. *Id*. The ALJ found the plaintiff's alleged seizures are not a medically determinable impairment, noting a lack of objective medical evidence of seizures. *Id*.

At step three, the ALJ found that plaintiff's impairments do not meet or equal the severity criteria for any Listing, specifically addressing Listings for mental impairments, including intellectual disorder. (*See* R. 19-21). The ALJ addressed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. *Id.; see* 20 C.F.R. § 404 Subpt. P App'x 1. The ALJ found that Plaintiff has a moderate limitation in each of the "paragraph B" domains-- understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 19-20).

At step four, after considering the entire record, the ALJ determined that plaintiff has the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: able to understand, remember and perform simple tasks that are learned by rote with limited variables and limited judgment required. The job should not involve tasks performed at a fast-paced production rate pace. The [plaintiff] is able to sustain attention and concentration for up to 2 hours at a time when performing simple tasks that are learned by rote with limited variables and limited judgment required and is able to sustain the mental demands associated with performing simple tasks that are learned by rote with limited variables and little judgment required throughout an ordinary workday and workweek. He is able to interact with supervisors as needed to receive work instructions and supervision should be simple, direct and concrete. The [plaintiff] is able to work in proximity to co-workers but job should not involve teamwork or other work where close communication or cooperation with co-workers is

> needed in order to complete work tasks. He is able to interact with the general public as needed to refer a member of the public to a supervisor or co-worker for assistance but job should not involve customer service or other work where interacting with the general public is an essential function of the job

(R. 21).

The ALJ indicated that in making this finding, she considered all of plaintiff's symptoms in connection with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling (SSR) 16-3p, as well as medical opinions and prior administrative findings, in accordance with the requirements of 20 C.F.R. §§ 404.1520c and 416.920c. (R. 21-22). The evidence included consultative examination reports by three different psychologists (including one psychological consultative examination from a prior, unsuccessful application for disability). On March 25, 2015, Johna Smasal, Ph.D. assessed the plaintiff with diagnoses of unspecified schizophrenia spectrum and other psychotic disorder; unspecified bipolar and related disorder; and unspecified substance-related disorder. (R. 23; *see* R. 590-596). On May 21, 2019, Joseph James, Psy.D. noted that the plaintiff reported marijuana use as recently as the previous day. (R. 23; *see* R. 738). Dr. James assessed provisional diagnoses of alcohol use disorder and cannabis use disorder, as well as unspecified anxiety and depressive disorders. (R. 24; *see* R. 736-743).[1] Dr. James identified intellectual disability

---

[1] Dr. James noted that the plaintiff "appeared to be under the influence of some sort of substance during the interview." (R. 24; *see* R. 739). In his hearing testimony, the plaintiff denied having been under the influence of drugs or alcohol during the examination. (R. 93).

as an additional diagnosis to be ruled out, and recommended further testing, to include the Minnesota Multiphasic Personality Inventory (MMPI-2), Wechsler Adult Intelligence Scale (WAIS), and Substance Abuse Subtle Screening Inventories (SASSI). (R. 740).

Pursuant to a request by the plaintiff's attorney, the plaintiff underwent another consultative examination on June 28, 2021 with Larry Vaught, Ph.D. (*See* R. 107-110). The ALJ ordered that the third consultative examination include "a mental RFC form with narrative description of limitations," as well as intelligence and other testing that Dr. James had recommended. (R. 110). In his report on the examination, Dr. Vaught noted the plaintiff's report and previous documentation of depression, anxiety, and post-traumatic stress disorder (PTSD). (R. 25). Dr. Vaught measured a full-scale I.Q. of 77 and assessed diagnoses of major depressive disorder, severe with psychotic features; borderline intellectual functioning; and chronic PTSD. *Id*.

Citing testimony by the VE as to a hypothetical person with plaintiff's RFC, the ALJ found at step four that plaintiff can perform his past relevant work as an industrial cleaner, both as actually performed at the heavy-exertion level and as generally performed at the medium-exertion level. (R. 28). Accordingly, the ALJ found at step four that plaintiff is not disabled.

The ALJ also proceeded to make alternative findings at step five. Based on the VE's testimony as to a hypothetical person with plaintiff's age, education, and RFC, the ALJ found the plaintiff can perform the requirements of representative occupations including:

> ***Laundry Worker***, medium exertion, unskilled, SVP Level 2, DOT # 361.684-014, with 103,000 jobs existing in the national economy;

> *Industrial Sweeper Cleaner*, medium exertion, unskilled, SVP Level 2, DOT # 389.687-010, with 137,000 jobs existing in the national economy; and
>
> *Hospital Cleaner*, medium exertion, unskilled, SVP Level 2, DOT # 323.687-010, with 54,000 jobs existing in the national economy.

(R. 28). Accordingly, the ALJ also found plaintiff is not disabled at step five. *Id*.

## IV. Discussion

The plaintiff's brief asserts a range of arguments that are not clearly delineated. The Court classifies the plaintiff's arguments as follows: (1) the ALJ failed to address certain diagnosed impairments—specifically, paranoid schizophrenia and PTSD—at step two; (2) the ALJ's findings at step four (and, alternatively, step five) failed to adequately account for evidence of those two conditions, and for Dr. Vaughn's finding that the plaintiff demonstrated very low mental processing speed on the WAIS; and (3) the ALJ improperly relied on the VE's testimony as to the mental work requirements consistent with the RFC determination. The Commissioner argues that the ALJ properly considered the medical and other evidence in the record and that substantial evidence supports the ALJ's decision.

### A.  Step Two

The plaintiff contends that the ALJ erred at step two by failing to address evidence that the plaintiff has received diagnoses of paranoid schizophrenia and PTSD. At step two of the evaluative sequence, the ALJ must determine whether a claimant suffers from severe impairments. That is all that is required of the ALJ at step two. *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007). Once an ALJ finds that a claimant has at least one severe impairment, a failure to designate others as "severe" at step two does not constitute reversible error. *See id.*; *Hill v. Astrue*, 289 F. App'x 289, at **2 (10th Cir. 2008) (emphasis

in original) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for the purposes of step two.").[2] This is because, under the regulations, the agency at later steps "consider[s] the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(e), 416.945(e).

Here, the ALJ found that the plaintiff has severe physical and mental impairments at step two. (R. 18). As such, the ALJ's failure to address any other medically determinable impairment, if any, at step two does not constitute reversible error. *See Oldham*, 509 F.3d at 1256. To the extent the plaintiff contends the ALJ failed to adequately address evidence in the RFC determination, the Court will consider and address such arguments *infra*.

### B. RFC Determination

At step four, the ALJ determines whether a claimant can return to his or her past relevant work, using a three-phase analysis. *Wells v. Colvin*, 727 F.3d 1061, 1074 (10th Cir.2013). First, the ALJ must evaluate the claimant's physical and mental RFC. Second, the ALJ must determine the physical and mental demands of the claimant's past relevant work. Finally, the ALJ determines whether the claimant can perform the job demands found in the second phase, despite the mental and/or physical limitations of the RFC determination. At each of these phases, the ALJ must make specific findings. *Id.*

---

[2] Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value."

The plaintiff argues that in the first phase of step four, the ALJ failed to adequately address the subtest score from Dr. Vaught's June 28, 2021 consultative examination, which indicated extremely low mental processing speed. As stated in the ALJ's decision, Dr. Vaught recorded a full-scale IQ of 77 using the WAIS. (R. 25). Dr. Vaught's report includes additional details regarding the WAIS results. Dr. Vaught reported that the full-scale score of 77 is "at the 6th percentile and in the borderline range of intellectual functioning." (R. 798). Dr. Vaught's report includes the plaintiff's subtest scores and percentile rankings in four categories. In verbal comprehension, the plaintiff's score was 78 (7th percentile); in perceptual reasoning, the plaintiff's score was 82 (12th percentile); in working memory, the plaintiff's score was 77 (6th percentile); and in processing speed, the plaintiff's score was 52, placing him in the 1st percentile. *Id.*

The plaintiff contends that the ALJ erred by failing to specifically address the subtest score showing the plaintiff's mental processing speed was in the first percentile. The plaintiff's brief suggests, without citing authority, that the extremely limited processing speed recorded by Dr. Vaught would eliminate even rote work, and that the ALJ failed to account for this finding in the RFC.

But the ALJ's decision accurately summarized Dr. Vaught's report and explained how Dr. Vaught's report and accompanying medical source statement support the ALJ's RFC determination. As the ALJ's decision explained, Dr. Vaught opined the plaintiff has mild limitations in the ability understand, remember and carry out simple instructions and the ability to make judgments on simple, work-related decisions; moderate limitations in the ability understand, remember and carry out complex instructions and the ability to make

judgments on complex work-related decisions; and moderate limitations in the ability to interact with co-workers and supervisors and respond appropriately to usual work situations and to changes in a routine work setting. (R. 26). Dr. Vaught opined that the claimant has only one marked limitation—in interacting with the general public. *See id*.

The ALJ concluded that Dr. Vaught's opinions are persuasive and are "supported by, and consistent with testing that was performed and other medical evidence of record." *Id*. The ALJ found that the plaintiff is limited to "simple tasks that are learned by rote with limited variables and limited judgment required," and eliminates any job involving "tasks performed at a fast-paced production rate pace." (R. 21).[3] The ALJ's RFC determination is consistent with the functional limitations Dr. Vaught assessed following his examination and testing of the plaintiff. (*See* R. 26; R. 800-803).

As such, substantial evidence supports the ALJ's decision with respect to the WAIS processing speed subtest score. The plaintiff offers no authority or cogent reason why Dr. Vaught's objective findings warranted limitations exceeding those Dr. Vaught himself assessed. Although the ALJ's decision did not detail the plaintiff's WAIS subtest scores or specifically discuss the processing speed subtest, the plaintiff has not shown that any such omission was error, reversible or otherwise. *See Qualls v. Apfel*, 206 F.2d 1368, 1372 (10th Cir. 2000) (noting that an ALJ's failure to include an alleged limitation in the RFC is not

---

[3] At step three, the ALJ's decision noted that, while the plaintiff indicated he has difficulty in concentrating and completing tasks, the plaintiff also admitted "that he is able to prepare simple meals, watch TV, and manage funds." (R. 19 (citing exhibits including Adult Function Report completed by the plaintiff's mother and the consultative examinations of Dr. James and Dr. Vaught)).

error if the limitation is not supported by the medical record); *see also Scull v. Apfel*, 221 F.3d 1352, 2000 WL 1028250, at *1 (10th Cir. July 26, 2000) (unpublished) ("[D]isability determinations turn on the functional consequences, not the causes, of a claimant's condition."); *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (affirming where, *inter alia*, claimant had not "directed [the court's] attention to any medical evidence that was disregarded" related to alleged functional limitation).[4]

The plaintiff's brief also argues that the ALJ failed to adequately address evidence relating to his diagnosed schizophrenia and PTSD. Although the plaintiff does not identify which additional functional limitations he contends are necessary, he points to evidence that his symptoms have included audial and visual hallucinations, paranoia, phobias, loose associations, flat affect, restless behavior, sleep disturbances, and nightmares. (Doc. 12 at 6-7). However, the ALJ's decision in fact noted records indicating or referring to previous schizophrenia diagnoses, including in Dr. Smasal's 2015 consultative evaluation. (*See* R. 23-24). In addition, the ALJ noted diagnoses of PTSD in 2019 and in Dr. Vaught's consultative examination. (R. 25). As discussed in the ALJ's decision, Dr. Vaught's examination also reviewed the plaintiff's past treatment records and reviewed his reported symptoms, including hypervigilance in public, feeling people may try to hurt him, slowed

---

[4] For the same reasons, the Court rejects the plaintiff's contention that the ALJ was required to obtain clarification of the VE's testimony via post-hearing interrogatories. The hypothetical need only reflect the limitations found to exist by the ALJ. *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995) (noting "the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record").

speech, hearing voices, seeing things in the periphery, sleep disruption and nightmares, lack of motivation, and lethargy. (R. 25; *see also* R. 796-799).

As explained *supra* and in the ALJ's decision, Dr. Vaught's examination findings and opinion support the ALJ's RFC determination. As such, the Court finds no merit to the plaintiff's suggestion that the ALJ failed to adequately consider evidence relating to schizophrenia and PTSD. The ALJ's discussion of the evidence was adequate, in that it was reasonable and consistent with the applicable legal standards, and substantial evidence supports the ALJ's RFC findings. *See Glenn v. Shalala,* 21 F.3d 983, 988 (10th Cir. 1994) (holding that court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion); *see also Oldham*, 509 F.3d at 1257-58 (on appeal, court reviews only sufficiency of evidence, not its weight); *Lax*, 489 F.3d at 1084 (court may not reweigh evidence and displace agency choice between two fairly conflicting views).

### C. Reliance on Vocational Expert Testimony

The plaintiff contends that the ALJ erred in the second phase of step four by ignoring an unspecified "probability" that, despite the VE's testimony regarding the plaintiff's past work as an industrial cleaner—which was based on the plaintiff's own testimony—the plaintiff's prior work was in fact more complex than the Level 2 general educational development (GED) rating associated with the industrial cleaner occupation.[5] The plaintiff

---

[5] The DOT identifies a GED reasoning level between 1 (lowest) and 6 (highest) for each listed job. GED reasoning level involves "aspects of education . . . which are required of the worker for satisfactory job performance." *DOT*, App. C, § III (4th Ed. Rev. 1991), 1991 WL 688702. Reasoning development level addresses the degree of analytical problem

14

appears to argue, in other words, that the ALJ improperly relied on the VE's testimony classifying the plaintiff's past work as an industrial cleaner.

Generally, an ALJ may rely upon vocational expert testimony in making findings at phase two and phase three of step four. *Doyal*, 331 F.3d at 761 (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996)). While the step-four analysis may not be delegated to the vocational expert, the ALJ may rely on information supplied by the vocational expert regarding the demands of plaintiff's past relevant work and regarding whether a person with plaintiff's RFC could meet those demands. *Id.*, 331 F.3d at 761. The ALJ must "investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); *see also* SSR 00-04p, 2000 WL 1898704.

The plaintiff argues that the ALJ's hypothetical RFC presented to the VE was not sufficiently "precise," and suggests that the plaintiff's own testimony was unreliable because the plaintiff "had a hard time remembering and was not clear in describing it." (Doc. 12 at 10-11). However, the Court has reviewed the hearing transcript and does not find support for this argument. The plaintiff testified during the July 7, 2021 hearing that he had worked for Green Country Staffing "since [he] was 18 years old." (R. 43-44). The plaintiff explained that, while he was assigned to work at National Steak and Poultry, his

---

solving required by a job. Reasoning level two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.*

job included "cleaning out the containers with the high-pressure water hose, cleaning out the containers and the buckets that they would season the meat, in processing the meat." (R. 44). When asked the heaviest weight he lifted in that job, the plaintiff recalled that he was "not really sure, but the [containers] were big old steel, stainless steel buckets" that "probably weighed, at least, over a hundred pounds." *Id*. In response to the ALJ's question, VE Melissa Brassfield identified that past work as the job of industrial cleaner, with an SVP level of 2. *Id*.; see also R. 65 (VE's testimony that "[h]e worked as an industrial cleaner, 381.687-030, medium, SVP: 2, heavy as performed."). The plaintiff's hearing counsel had no questions regarding the VE's testimony. (R. 68). Further supporting the reliability of Ms. Brassfield's testimony, during the plaintiff's first ALJ hearing, a different VE classified plaintiff's past work as the same industrial cleaner job, based on her own review of the record as to the plaintiff's past work. (R. 101). As such, the Court finds that the ALJ reasonably and properly relied on VE testimony in classifying the plaintiff's past relevant work as an industrial cleaner.

The plaintiff also argues that GED reasoning Level 2—which characterizes plaintiff's past relevant work, as well as two of the alternative occupations the ALJ identified at step five—is not consistent with the ALJ's RFC determination, which limits the plaintiff to "simple tasks learned by rote with limited variables and limited judgment required." (*See* Doc. 12 at 19). However, the relevant case law does not support this argument. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (noting that Level 2 reasoning "appears more consistent with" an RFC for "simple and routine" work tasks); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) (rejecting argument

that limitation to "simple and routine work tasks" is inconsistent with Level 2 reasoning); *see also Ray v. Comm'r of Soc. Sec.*, No. CIV-18-629-SM, 2019 WL 1474007, at *5 (W.D. Okla. Apr. 3, 2019) (unpublished) (finding that Level 2 reasoning does not, "on its face," conflict with an RFC limited to simple work-related instructions and tasks; collecting cases); *compare Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (unpublished) (citing Eighth Circuit holding that "a limitation to simple instructions is inconsistent with both level-two and level-three reasoning," but noting that Tenth Circuit has not ruled "whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions"). Under the existing case law, there was no apparent conflict between the DOT and the VE's testimony identifying jobs with GED Level 2 reasoning, and therefore the ALJ did not commit reversible error in accepting the VE's testimony.

## V.    Conclusion

For the reasons set forth above, the ALJ's decision is supported by substantial evidence and reflects the application of proper legal standards. Accordingly, the decision of the Commissioner finding the plaintiff not disabled is **affirmed.**

**SO ORDERED** this 29th day of August, 2023.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge